UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JEFFREY SCOTT PRICE,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:13-cv-665
Barrett, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for disability insurance benefits (DIB). This matter is before the Court on plaintiff's Statement of Errors (Doc. 8), the Commissioner's response in opposition (Doc. 15), and plaintiff's reply memorandum (Doc. 16).

**I. Procedural Background**

Plaintiff filed an application for DIB in June 2009, alleging disability since January 1, 2007, due to anxiety, bipolar disorder, insomnia, and high blood pressure. (Tr. 166). Plaintiff's application for DIB was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Lorenzo Level. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing, which was conducted via videoconference. On January 13, 2012, the ALJ issued a decision denying plaintiff's DIB application. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

I. Analysis

    A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment - *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities - the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant

2

can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] last met the insured status requirements of the Social Security Act on June 30, 2010.

2. The [plaintiff] did not engage in substantial gainful activity during the period from his alleged onset date of January 1, 2007 through his date last insured of June 30, 2010 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the [plaintiff] had the following severe impairments: degenerative disc disease; obesity; carpal tunnel syndrome; migraines; hypertension; anxiety; mood disorder; coronary artery disease; bipolar; personality disorder; and kidney stones (20 CFR 404.1520(c)).

4. Through the date last insured, the [plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the [ALJ] finds that, through the date last insured, the [plaintiff] had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except the [plaintiff] is restricted to frequent fingering and handling with his right upper extremity. The [plaintiff] is able to understand, remember and carry out simple instructions. The [plaintiff] is able to perform simple tasks. The [plaintiff] is occasional [sic] interact with the public, coworkers and supervisors.

6. Through the date last insured, the [plaintiff] was unable to perform any past relevant work (20 CFR 404.1565).[1]

7. The [plaintiff] was born [in] . . . 1971 and was 38 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8. The [plaintiff] has a limited education and is able to communicate in English (20 CFR 404.1564).

---

[1] Plaintiff's past relevant work was as a fast food worker and a stock clerk/cashier. (Tr. 22).

3

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the [plaintiff] could have performed (20 CFR 404.1569 and 404.1569(a)).[2]

11. The [plaintiff] was not under a disability, as defined in the Social Security Act, at any time from January 1, 2007, the alleged onset date, through June 30, 2010, the date last insured (20 CFR 404.1520(g)).

(Tr. 16-24).

**C. Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a two-fold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

---

[2]The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative unskilled occupations such as hand packager (4,000 jobs regionally and 827,000 jobs nationally), Cleaner II (1,100 jobs regionally and 335,000 jobs nationally), and cleaner, housekeeping (1,500 jobs regionally and 250,000 jobs nationally). (Tr. 23).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

On appeal, plaintiff assigns four errors. First, plaintiff alleges that the ALJ improperly weighed the mental health opinions of record. (Doc. 8 at 7-13). Second, plaintiff alleges the ALJ erred by fashioning a mental RFC that is not supported by substantial evidence. (*Id*. at 13-15). Third, plaintiff contends the ALJ erred by failing to properly analyze whether his mental impairments satisfy the Listings. (*Id*. at 15-17). Finally, plaintiff alleges as his fourth assignment of error that the ALJ improperly assessed his credibility. (*Id*. at 17-18).

**1. Whether the ALJ erred in weighing the medical opinion evidence**

Plaintiff alleges that the ALJ improperly weighed the medical opinion evidence related to his mental impairments. (*Id*. at 7-13). Specifically, plaintiff contends the ALJ improperly discounted the opinion of his treating psychiatrist, Dr. Richard Brown, M.D., and failed to consider the findings and conclusions of his treating therapist, Gary Carter, MSW, a licensed social worker.

The Commissioner contends the ALJ fulfilled his duty under the regulations to weigh and assess the medical opinion evidence. (Doc. 15 at 3-7). The Commissioner argues that the ALJ

5

provided "good reasons" for affording less than "controlling weight" to the opinion of plaintiff's treating psychiatrist, Dr. Brown. (*Id.* at 5, citing Tr. 22). The Commissioner contends that the opinions of the examining and non-examining mental health sources support the ALJ's decision to afford "little weight" to Dr. Brown's assessment. (*Id.* at 5-7). The Commissioner further contends that the ALJ did not err by failing to expressly discuss "all of the counseling notes" prepared by Mr. Carter. (*Id.* at 5, n. 5).

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors

6

set forth in 20 C.F.R. § 404.1527(c)(2)-(6) in determining what weight to give the opinion. *Gayheart,* 710 F.3d at 376; *Wilson,* 378 F.3d at 544. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. § 404.1527(c)(2)(i)(ii); *Wilson,* 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(3)-(6); *Gayheart,* 710 F.3d at 376; *Wilson,* 378 F.3d at 544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given a] treating source's opinion.'" *Cole,* 661 F.3d at 937 (citing former 20 C.F.R. § 404.1527(d)(2)[1]). *See also Wilson,* 378 F.3d at 544 (ALJ must give "good reasons" for the ultimate weight afforded the treating physician opinion). Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole,* 661 F.3d at 937 (citing SSR 96-2p). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Gayheart,* 710 F.3d at 376 (quoting *Wilson,* 378 F.3d at 544).

Plaintiff's treating psychiatrist Dr. Brown submitted a Mental Impairment Questionnaire dated February 27, 2011 (Tr. 590-95), and a follow-up letter dated October 4, 2011. (Tr. 637-38). In the February 2011 assessment, Dr. Brown indicated he had been treating plaintiff on a regular basis beginning May 3, 2010, and he had seen plaintiff for a total of eight sessions. (Tr. 590). Dr. Brown listed a number of prescribed medications plaintiff was taking, including

---

[1] Title 20 C.F.R. § 404.1527 was amended effective March 26, 2012. The provision governing the weight to be afforded a medical opinion that was previously found at § 404.1527(d) is now found at § 404.1527(c).

7

Xanax, and he described fatigue as a side effect. (*Id*.). Dr. Brown stated that plaintiff was alert and oriented "x3," he had a blunted affect, he appeared anxious/tense, he was tearful at times, and he denied current suicidal/homicidal ideation. (*Id*.). His prognosis was fair. (*Id*.). Dr. Brown indicated that plaintiff suffers from the following symptoms: anhedonia or pervasive loss of interest in almost all activities; appetite disturbance with weight gain; decreased energy; blunt, flat or inappropriate affect; feelings of guilt or worthlessness; impairment in impulse control; generalized persistent anxiety; mood disturbance; difficulty thinking or concentrating; recurrent and intrusive recollections of a traumatic experience, which are a sign of marked distress; psychomotor retardation or agitation; persistent disturbances of mood or affect; paranoid thinking or inappropriate suspiciousness; seclusiveness; emotional withdrawal or isolation; bipolar syndrome, but without manic syndrome currently; intense and unstable interpersonal relationships and impulsive and damaging behavior; motor tension; emotional lability; deeply ingrained, maladaptive patterns of behavior; and sleep disturbance. (Tr. 591). Dr. Brown opined that plaintiff was "seriously limited, but not precluded" in a number of the mental abilities and aptitudes needed to do unskilled work and semiskilled and skilled work; he was "unable to meet competitive standards" in a number of these mental abilities; he had "no useful ability to function" in the area of being able to work in coordination with or proximity to others without being unduly distracted; and he was "unable to meet competitive standards" in most of the mental abilities needed to do particular types of jobs. (Tr. 592-93). Dr. Brown assessed the following functional limitations:

- Marked restriction of activities of daily living
- Extreme difficulties in maintaining social functioning
- Marked difficulties in maintaining concentration, persistence or pace
- Four or more episodes of decompensation within a 12-month period, each of at least two weeks duration

(Tr. 593). Dr. Brown opined that plaintiff would miss four or more days of work per month due to his impairments or treatment. (Tr. 594).

After plaintiff's counsel indicated at the ALJ hearing that Dr. Brown's progress notes were "somewhat difficult to read" and at counsel's suggestion, the ALJ gave plaintiff an opportunity to obtain and submit typewritten copies of the notes. (Tr. 64-65). In response, Dr. Brown submitted his letter dated October 4, 2011. (Tr. 637-38). The letter states that Dr. Brown was unable to completely re-type the notes, but he could summarize plaintiff's issues, treatment, and level of functioning. (Tr. 637). Dr. Brown stated that plaintiff had seen him regularly for a total of 14 sessions and plaintiff had also regularly seen a therapist in Dr. Brown's practice. (*Id.*). Dr. Brown reported that plaintiff's medications included Lamictal, Abilify, Xanax and Zolpidem, and plaintiff had obtained "some stability" on these medications. (*Id.*). Dr. Brown reported that plaintiff had demonstrated some difficulty getting along with others; specifically, he lived on a property he called his "compound" with his daughter and plaintiff had relayed instances of numerous conflicts with neighbors or others who trespassed on his property. (*Id.*). Dr. Brown reported that plaintiff was quite isolated on a daily basis and did little outside the home, partly as a result of a desire to avoid legal trouble due to his anger issues. (Tr. 638). Dr. Brown described plaintiff as spending most of his time alone, with occasional visits from extended family; focusing on helping his daughter through a separation and likely divorce; and "minimally able to get out to do the basics of running a home, like grocery shopping, paying bills, etc." (*Id.*). Dr. Brown concluded:

> I [sic] summary, I feel Mr. Price to be an appropriate candidate for long term disability due to several factors mentioned above, including: Lack of emotional regulation even with appropriate medical control and therapy; History of inability to tolerate work situations; History of difficult interactions within normal societal bounds and ongoing, somewhat self-imposed isolation to prevent acting out that could lead to more legal problems.

9

(*Id.*).

The ALJ gave "little weight" to Dr. Brown's opinion. (Tr. 22). The only opinion from Dr. Brown acknowledged by the ALJ was Dr. Brown's assessment that plaintiff would be absent from work four or more days per month "due to his impairments and treatment for those impairments." (Tr. 22). The ALJ stated that Dr. Brown had forwarded handwritten notes of eight treatment sessions in support of his assessment. (*Id.*). However, the ALJ asserted he was unable to read the notes "completely" and had left the record open to allow for the submission of typewritten notes. (*Id.*). The ALJ determined that the October 4, 2011 letter submitted by Dr. Brown in lieu of typewritten notes was "no more compelling and informative than the original unsupported opinion that led to the request for typed notes." (*Id.*). The ALJ concluded: "Without actual supporting, corroborative progress notes and the presence of other evidence already discussed that suggests greater functioning, the [ALJ] affords little weight to the opinions of Dr. Brown." (*Id.*).

The ALJ did not provide "good reasons" for his decision to afford less than "controlling weight" to the opinion of the treating psychiatrist and to instead give the opinion "little weight." The ALJ was entitled to disregard Dr. Brown's handwritten progress notes. Plaintiff concedes the progress notes are "difficult to read" (Doc. 8 at 9), and a review of the notes discloses they are largely illegible, or at least very difficult to decipher. (Tr. 597-615).

However, the ALJ inexplicably failed to consider other evidence offered in support of Dr. Brown's opinion. First, the ALJ did not discuss any of the information or findings from Dr. Brown's Mental Impairment Questionnaire and whether those findings supported Dr. Brown's opinion. (Tr. 590-95). In addition, the ALJ did not specifically consider the information set forth in Dr. Brown's October 2011 follow-up letter, which summarized the progress notes that

10

the ALJ disregarded as illegible and included information about plaintiff's treatment history, medications, and reports of symptoms. (Tr. 637-38).

Further, the ALJ did not consider progress notes for the period February 2010 to September 2011 prepared by Gary Carter, MSW, a licensed social worker. (Tr. 617-35). Although Mr. Carter is not an "acceptable medical source" under the regulations, he does qualify as an "other source." *Smith v. Colvin,* No. 2:13-CV-582, 2014 WL 2197940, at *2 (S.D. Ohio May 27, 2014) (citing 20 C.F.R. § 404.1513(d)). As such, information submitted by him "cannot establish the existence of a medically determinable impairment"; however, it "may provide insight into the severity of [plaintiff's] impairment(s) and how it affects [plaintiff's] ability to function." *Id.* (quoting SSR 06-3p, 2006 WL 2329939 at *2). *See also Cruse v. Comm'r of Soc. Sec.,* 502 F.3d 532, 541 (6th Cir. 2007). For reasons that are not clear from the record, the ALJ made no mention of Mr. Carter in his decision. It is therefore impossible to discern whether the ALJ rejected the information provided by Mr. Carter as having no probative value or whether the ALJ simply ignored Mr. Carter's treatment notes. *See Morris v. Sec'y of Health & Human Servs.,* No. 86-5875, 1988 WL 34109, at * 2 (6th Cir. Apr. 18, 1988) (when an ALJ fails to mention relevant evidence in his decision, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.") (quoting *Cotter v. Harris,* 642 F.2d 700, 705 (3d Cir. 1981)). The ALJ's omission was not harmless given that Dr. Brown and Mr. Carter were part of the same practice and provided counseling and psychiatric care to plaintiff as part of a "continuum of care." *See Guyaux v. Comm'r of Soc. Sec.*, No. 13-12076, 2014 WL 4197353, at *16 (E.D. Mich. Aug. 22, 2014) (stating it was "much more reasonable and logical" to consider the opinions of treating physicians from the same practice together as they involved a "continuum of care" provided to the plaintiff over a period of time). Indeed, Dr. Brown

11

specifically noted in his October 2011 letter that plaintiff was regularly seen by a therapist in Dr. Brown's practice. (Tr. 637). For these reasons, the ALJ's decision to give Dr. Brown's opinion "little weight" based on the absence of corroborating progress notes is not substantially supported.

In addition to the lack of corroborating progress notes, the ALJ cited two reasons for giving "little weight" to Dr. Brown's opinion. The ALJ found that Dr. Brown's October 2011 letter was "no more compelling and informative" than his February 2011 assessment, and the ALJ generally referenced "the presence of other evidence already discussed that suggests greater functioning." (Tr. 22). The ALJ did not elaborate further on his reasons for affording Dr. Brown's opinion "little weight." (*Id.*). The Commissioner argues that the ALJ was not required to go beyond summarily stating his reasons for rejecting the treating physician's opinion in order to satisfy the "good reasons" requirement. (Doc. 15 at 5, citing *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009)). The Commissioner cites *Allen* for the proposition that an ALJ's "one-sentence rejection of [a] treating physician's opinion" may be sufficient to satisfy the "good reasons" requirement. (*Id.*). However, *Allen* is distinguishable from the present case. In *Allen*, the ALJ had accepted some of the treating physician's opinions provided on a questionnaire, rejected others as speculative, and gave others no weight because they involved decisions reserved to the exclusive judgment of the Commissioner.[3] *Allen*, 561 F.3d at 651. The *Allen* Court found the ALJ's one-sentence rejection of one of the four questionnaire responses was acceptable because though "brief, it reache[d] several of the factors that an ALJ must consider when determining what weight to give a non-controlling opinion by a treating source,

---

[3] The ALJ's rejection read: "Dr. McCord merely affirmed that it might be reasonable to conclude the claimant's symptoms had remained unchanged since December of 2003, an opinion the undersigned found to be speculative since Dr. McCord had not seen the claimant for the first time until some two years later, on December 8, 2005." *Allen*, 561 F.3d at 651.

12

including: the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; and the supportability of the opinion." *Id*. (internal citations omitted). Accordingly, the *Allen* Court held that the ALJ had provided "good reasons" for discounting the treating physician's response to the question in issue. *Id*.

In contrast to *Allen*, the ALJ's conclusory rejection of Dr. Brown's opinion does not satisfy the "good reasons" requirement. The reasons given by the ALJ for rejecting the treating psychiatrist's opinion are vague and fail to encompass the regulatory factors the ALJ "must consider when determining what weight to give a non-controlling opinion by a treating source[.]" *Id*. The ALJ made no mention of the nature, length and extent of the treatment relationship or the frequency of examination in his decision. 20 C.F.R. § 404.1527(c)(2); *Allen*, 561 F.3d at 651. It is therefore impossible to discern whether the ALJ considered these factors.

Further, the ALJ did not explain what evidence of record supported his decision to afford Dr. Brown's opinion "little weight." The Commissioner argues that the medical opinion evidence provides support for the ALJ's decision to discount Dr. Brown's opinion. (Doc. 15 at 5-7). The Commissioner notes that the ALJ gave "significant weight" to consultative examining psychologist Dr. Rosenthal's assessment of mild to moderate mental limitations on the ground the assessment was "generally consistent with Dr. Rosenthal's findings and the record as a whole."[4] (Doc. 5 at 6, citing Tr. 22). However, the conclusory reasons the ALJ gave for crediting Dr. Rosenthal's opinion in part do not demonstrate how Dr. Rosenthal's report demonstrated greater functioning and in what ways it was better supported by the record than the

---

[4] Dr. Rosenthal examined plaintiff on August 26, 2009, and opined that plaintiff's ability to understand, remember and follow simple one or two step job instructions was not impaired; his ability to relate to bosses, co-workers and the general public was moderately impaired; his ability to sustain attention and concentration to complete daily work tasks was mildly impaired due to his depressive and anxiety symptoms; and his ability to tolerate the stress of day-to-day employment was moderately impaired due to his depressive and anxiety symptoms. (Tr. 434-39). The ALJ adopted these limitations except he found that plaintiff "has a greater impairment in concentration, persistence or pace." (Tr. 22).

13

opinion of the treating psychiatrist. (Tr. 22). Absent some explanation by the ALJ regarding these matters, the ALJ has failed to provide sufficient justification for his decision to credit Dr. Rosenthal's opinion over that of Dr. Brown. *See Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 753 (6th Cir. 2011) ("[I]t is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; *there must be some effort to* identify the specific discrepancies and to *explain why it is the treating physician's conclusion that gets the short end of the stick.*" (quoting *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 552 (6th Cir. 2010) (emphasis in the original)).

The Commissioner also suggests that the opinions of non-examining state agency psychologists Drs. Edwards and Zwissler provide substantial support for the ALJ's decision to discount Dr. Brown's assessment of plaintiff's functioning. (Doc. 15 at 6-7). However, the ALJ did not mention Dr. Zwissler's opinion at all.[5] Further, the ALJ gave only "some weight" to Dr. Edwards' September 2009 opinion setting forth the following mental limitations:

> The claimant retains the capacity for work that is simple and routine in nature with tasks that remain reasonably static. Changes need to be both explained and demonstrated. He can relate to others in a superficial manner and does not require more than routine supervision. Criticism should not be given in a public venue and would be better received if constructive and alternatives suggested and explained. He would do best if contact with the public is minimal and is not an integral part of his job duties [Tr. 440-43].

(Tr. 22). The ALJ stated that this assessment of plaintiff's mental functioning was "somewhat consistent with the findings of examining psychologist, Dr. Rosenthal, and the evidence of record as a whole." (Tr. 22). The ALJ's explanation is so vague as to be meaningless and does

---

[5] Plaintiff contends that the ALJ appears to have given "significant weight" to state agency reviewing psychologist, Dr. Mel Zwissler, Ph.D., at a portion of the ALJ decision that references an unnamed "consulting psychologist." (Doc. 8 at 12, citing Tr. 22). It is apparent, however, that the "consulting psychologist" referenced by the ALJ is Dr. Rosenthal. (Tr. 21-22).

14

not support the ALJ's decision to discount the treating psychiatrist's opinion. *See Karger*, 414 F. App'x at 753.

Thus, the ALJ failed to substantiate his reasons for discounting the treating psychiatrist's opinion and failed to consider a number of pertinent regulatory factors, thereby precluding meaningful review of the ALJ's decision. *Gayheart*, 710 F.3d at 376 (quoting *Wilson*, 378 F.3d at 544). The ALJ did not fulfill his obligation to give "good reasons" for his decision to give less than "controlling weight" to Dr. Brown's opinion and to instead afford the opinion "little weight." Plaintiff's first assignment of error should be sustained. This matter should be reversed and remanded for the ALJ to reevaluate and reweigh the medical opinion evidence related to plaintiff's mental impairments.

**2. Whether the ALJ erred by formulating a mental RFC that is not substantially supported by the evidence of record**

Plaintiff alleges as his second assignment of error that the ALJ formulated a mental RFC that is not substantially supported by the evidence of record. (Doc. 8 at 13-15). Specifically, plaintiff alleges that the ALJ mischaracterized plaintiff's mental health treatment as "limited"; failed to substantiate his reasons for discounting the treating psychiatrist's opinion; failed to evaluate information from Dr. Brown's progress notes and Mr. Carter's typewritten progress notes; and failed to include in the RFC certain non-exertional restrictions which are substantially supported by Dr. Brown's report. The Commissioner argues in response that the opinions and findings of the consultative examining psychologist Dr. Rosenthal and the non-examining state agency psychologists support the mental RFC finding. (Doc. 15 at 5-7).

Plaintiff's arguments in support of his second assignment of error go to whether the ALJ erred in evaluating and weighing the medical opinion evidence, thereby resulting in an unsupported mental RFC. As set forth above, the undersigned recommends that this matter be

15

remanded for the ALJ to reevaluate and reweigh the medical opinion evidence related to plaintiff's mental impairments. Reevaluation of that evidence may impact the ALJ's mental RFC finding. Accordingly, plaintiff's second assignment of error should be sustained. The ALJ should be directed to reassess plaintiff's mental RFC on remand.

### 3. Whether the ALJ erred by improperly analyzing the applicability of the Listings

Plaintiff's third assignment of error alleges that the ALJ improperly analyzed whether plaintiff's mental impairments satisfy Listings 12.04, 12.06 and 12.08, 20 C.F.R. Pt. 404, Subpt. P, Appx. 1. Plaintiff specifically alleges that the ALJ failed to properly assess whether he experienced multiple episodes of decompensation, and whether his mental impairments satisfy the "Paragraph C" criteria, in light of specific findings made by his treating psychiatrist, Dr. Brown. (Doc. 8 at 15-17). Resolution of these specific questions and plaintiff's Listings argument as a whole may be impacted by the ALJ's reevaluation of the medical opinion evidence on remand.[6] Accordingly, plaintiff's third assignment of error should be sustained. The ALJ should reassess on remand whether plaintiff's mental impairments satisfy the Listings.

### 4. Whether the ALJ's credibility determination is substantially supported

As his final assignment of error, plaintiff alleges that the ALJ erred in assessing his credibility. Although the ALJ's reevaluation of the medical opinion evidence and reassessment of the RFC may impact the remainder of the ALJ's sequential evaluation, resolution of plaintiff's fourth assignment of error is nonetheless warranted because the ALJ's credibility finding is patently deficient.

---

[6] For instance, Dr. Brown indicated in his Medical Impairment Questionnaire that plaintiff's mental impairments may satisfy the criteria of Listing 12.04(C), 20 C.F.R. Pt. 404, Subpt. P., Appx. 1. Dr. Brown opined that plaintiff has a medically documented history of a "chronic organic mental, schizophrenic, etc., or affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do any basic work activity, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following: 1. Three or more episodes of decompensation within 12 months, each at least two weeks long. 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate." (Tr. 594).

Although it is for the ALJ and not the reviewing Court to evaluate the credibility of witnesses, the ALJ must determine the claimant's credibility based on consideration of the entire case record and explain his credibility determination. *Rogers*, 486 F.3d at 247-48. In addition to the objective medical evidence, when assessing the credibility of the claimant's statements the ALJ should consider the individual's daily activities; the location, duration, frequency, and intensity of the individual's symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes to alleviate the symptoms; treatment, other than medication, the individual receives for relief of the symptoms; measures other than treatment the individual uses to relieve the symptoms; and any other factors concerning the individual's functional limitations and restrictions due to his symptoms. SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996).

Here, the ALJ failed to provide an explanation for his credibility finding. The ALJ used boilerplate language and did not discuss the regulatory factors the ALJ must address in assessing the claimant's credibility.[7] *See Parker v. Astrue*, 597 F.3d 920, 921-22 (7th Cir. 2010) (the court held that boilerplate language similar to that used by the ALJ here was not sufficiently detailed to provide the reviewing court with the grounds upon which the RFC determination was based). As in *Parker*, the ALJ here "failed to mention highly pertinent evidence [and] because of . . . missing premises fail[ed] to build a logical bridge between the facts of the case and the outcome." *Id.* at 921. The ALJ summarized plaintiff's testimony and the medical evidence, but the ALJ did not discuss how the relevant evidence impacted plaintiff's credibility. The ALJ's decision does not contain specific reasons for the credibility finding which are supported by the

---

[7] The ALJ found: "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." (Tr. 19).

evidence in the record, and the decision is not "sufficiently specific to make clear to [plaintiff] and to any subsequent reviewers the weight the [ALJ] gave to [plaintiff's] statements and the reasons for that weight." *Rogers,* 486 F.3d at 248 (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186). Accordingly, plaintiff's fourth assignment of error should be sustained. On remand, the ALJ should reassess plaintiff's credibility.

**IV. This matter should be reversed and remanded for further proceedings.**

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the Court notes that all essential factual issues have not been resolved in this matter, nor does the current record adequately establish plaintiff's entitlement to benefits as of his alleged onset date. *Faucher v. Secretary of H.H.S.,* 17 F.3d 171, 176 (6th Cir. 1994). This matter should be remanded for further proceedings, including reevaluation of the opinions of the mental health sources of record and reassessment of plaintiff's RFC and credibility, consistent with this decision.

**IT IS THEREFORE RECOMMENDED THAT**:

The decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date: 11/10/14

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JEFFREY SCOTT PRICE,
    Plaintiff,

Case No. 1:13-cv-665
Barrett, J.
Litkovitz, M.J.

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).